# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

FRED HAYWOOD                                                    PETITIONER
Reg. #99990-024

V.                              NO. 2:15CV00135-JTR

C.V. RIVERA, Warden,                                           RESPONDENT
FCI-Forrest City Medium

## MEMORANDUM AND ORDER

Fred Haywood, an inmate in the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus, challenging two prison disciplinary convictions.[1] *Doc. 1.*

## I. Background

### A.     May 31, 2013 Disciplinary Conviction

On March 25, 2013, a prison officer searched Haywood's locker and found a medication bottle containing two pills. Medical staff identified the pills as Mirtazapine and stated that they had not been prescribed for Haywood. The officer wrote an incident report charging Haywood with "Misuse of Medication," a Code 302

---

[1] Haywood received both convictions while he was incarcerated in the Metropolitan Correctional Center-Chicago. *Doc. 6-1, at 3, 22.* At some point, he was transferred to FCI-Forrest City, where he was housed when he filed this § 2241 action.

prohibited act. *Doc. 6-1, at 25.* When Haywood was advised of the charge later that day, he said the pills were not his. *Id. at 25-26.* Based on the charging officer's report, the photographic evidence, and the medical staff's statement, an investigating officer concluded that the incident report was "accurate and valid" and referred the matter to the Unit Discipline Committee ("UDC") for further action. *Id. at 26-27.*

On March 27, 2013, Haywood appeared before the UDC. He stated that, because he did not have a lock, he could not secure items in his locker. The UDC found that Haywood had committed the charged offense and, as sanctions, imposed 30 days loss of phone and e-mail privileges. *Id. at 25.* Haywood appealed the UDC's decision. *Id. at 30.*

On April 4, 2013, the Warden reviewed the appeal and determined that: (1) the "severity level" of the offense was "not correct"; (2) the "description of the incident does not meet the elements of Code #302 Misuse of Authorized Medication because the inmate was not authorized to possess the prescription drugs found in his cell"; and (3) the description instead "meets the elements of Code #113, Possession of Drugs Not Prescribed to the Individual by Medical Staff." *Id. at 41-42.* The Warden thus directed the UDC to conduct a rehearing, inform Haywood that the description of the conduct met the elements of Code 113, and forward the incident report to the Discipline Hearing Officer ("DHO") for final disposition. *Id. at 42.* The Warden

directed the UDC to ensure that Haywood received "notice of the amended charge at least 24 hours before the DHO hearing." *Id.*

On April 9, 2013, the UDC conducted a rehearing on the incident report. The UDC: (1) notified Haywood that the matter was being referred to the DHO on the amended charge of "Possession of Drugs Not Prescribed" (Code 113); and (2) advised Haywood of his rights in connection with the DHO hearing. *Id. at 25, 44, 46.* Haywood declined to have a staff representative appointed to represent him at the DHO hearing, and he identified one inmate witness. *Id. at 44.*

On May 31, 2013, DHO Michael Puckett conducted a hearing on the amended disciplinary charge.[2] *Id. at 48.* Haywood was present, and he did not request a staff representative. He denied the charge, and he stated that he was not in his cell when the incident occurred, other inmates were in his cell in his absence, and his possessions were not locked up. *Id.* His witness also stated that Haywood was not in the cell at the time of the confiscation but that several other inmates had been in the cell. The witness stated that, although he saw that Haywood's locker was open, he did not observe anyone placing anything in it. *Id. at 48-49.*

The DHO found that Haywood had committed the charged offense and, as

---

[2]Puckett was the DHO for both of the disciplinary convictions at issue in this § 2241 action. His sworn declaration (*Doc. 6-1, at 1-10*) summarizes Haywood's disciplinary proceedings, explains various matters, and attaches supporting documentation.

sanctions, disallowed 41 days of good conduct time ("GCT"). *Id. at 49-50*. The DHO

stated that his decision was based on the "greater weight of the evidence as

presented," *i.e.*:

> [S]ection 11 of the incident report where staff documented a search of
> your locker was conducted and a medicine bottle was found in it. This
> bottle contained two pills identified as Mirtazapine. Medical has verified
> that you are not presently prescribed this medication or at any time in the
> past. The DHO considered the witness statement and advised you his
> testimony neither supports nor refutes the charge on your behalf. Your
> witness stated that he did not see anyone put the medication bottle in
> your locker. Therefore, greater weight was given to the statement of the
> reporting staff member, as he was merely acting in routine performance
> of his duties and has nothing to gain from fabrication of the charge. The
> DHO considered your contention that someone placed the item in your
> locker; however, the DHO advised you that you are responsible for any
> contraband found in your assigned areas, to include underneath your
> assigned locker, bed, and any common areas within the cell. This
> information is included in the Inmate Rights and Responsibilities.
> Additionally, you should keep your locker secured at all times and search
> your areas. You are responsible for contraband found in your cell, locker,
> or in the common area of your cell. The DHO asked you if you received
> an institution handbook and had gone through Admission and
> Orientation upon arrival, to which you confirmed you received a
> handbook and went through Admission and Orientation and are aware
> of this information. Additionally, you provided no evidence to support
> your claim that someone put the medication in your locker. The DHO
> considered your denial of the charge; however, greater weight was given
> to the statement of the reporting officer, as [she was] merely acting in
> routine performance of her duties and has nothing to gain from
> fabrication of the charge. You on the other hand may not be truthful in
> your statements due to your interest in not being held accountable for
> your actions. There is some evidence to support that you were in
> possession of a drug not prescribed to you by medical staff, based upon
> the reporting officer's documented report, and supporting memorandum;
> all shows you committed the prohibited act.

-4-

*Id. at 50*. The DHO also stated the reasons for the sanctions he imposed.[3] *Id.* Haywood's administrative appeals were denied. *Id. at 53-58*.

In this § 2241 action, Haywood argues that the May 31, 2013 disciplinary conviction was "invalid and illegal," violated Bureau of Prisons ("BOP") policy, and violated his constitutional rights, because:

>   (1)    The Warden improperly increased his disciplinary sanction by "re-issuing" the incident report and elevating the severity of the charged offense after Haywood had appealed;[4]

>   (2)    Haywood was subjected to double jeopardy because, when the new sanction was imposed for the elevated offense, he had already completed his sanctions from the first disciplinary decision;

>   (3)    Increasing the severity of the offense and sanction was an "act of retaliation" for Haywood's seeking administrative review of the initial disciplinary decision; and

>   (4)    Disallowing 41 days of GCT was an improper sanction because

---

[3]The DHO stated:

The possession of illegal drugs is against Federal Law and has historically been a factor in producing inmate behavior which seriously disrupts the security and orderly operation of the institution. Such behavior cannot be tolerated as it jeopardizes the safety of staff and inmates. The sanctions imposed by the DHO were taken to express the gravity of the infraction and let the inmate know that he, and he alone, will be held responsible for his actions at all times. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.

*Id. at 50*.

[4]Haywood references BOP Program Statement 5270.09, which provides that a "reviewing official ... may not increase a valid sanction." *See Doc. 6-1, at 38*.

-5-

Haywood had not yet earned any GCT.

*Doc. 1, at 4; Doc. 2, at 3-4; Doc. 9 at 1-4.*

### B.      May 17, 2013 Disciplinary Conviction

On May 1, 2013, Haywood was charged with "Engaging in a Sexual Act" (Code 205), based on his observed conduct in the visiting room with a visitor. *Doc. 6-1, at 76.* On May 17, 2013, DHO Puckett conducted a hearing and determined that Haywood had committed the charged offense. As sanctions, the DHO imposed: (1) disallowance of 27 days of GCT; (2) 30 days of disciplinary segregation; (3) 90 days of telephone, e-mail and commissary restriction; and (4) 180 days of visiting restriction. *Id. at 77-78.* Haywood's administrative appeals were denied. *Id. at 70-74.*

In this § 2241 habeas action, Haywood's only challenge regarding this disciplinary conviction is the DHO's disallowance of 27 days of GCT, which he says exceeded the amount authorized under BOP policy. *Doc. 2 at 4; Doc. 9 at 3-4.*

## II. Discussion

### A.      Due Process

In *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974), the Supreme Court held that a disciplinary conviction which results in a prisoner losing good time credits implicates a liberty interest protected by the Due Process Clause. However, because

prison disciplinary proceedings are not part of a criminal prosecution, the "full panoply of rights" due to a defendant in such a prosecution, or those mandated for parole and probation revocation hearings, need not be followed in all respects. *Id.* at 556, 559-61. In the prison disciplinary context, due process requires only the following minimum procedural protections: (1) written notice of the disciplinary charges at least 24 hours before the hearing; (2) an opportunity to call witnesses and present a defense; and (3) a written statement from an impartial decision-maker identifying the evidence relied upon and the reasons for the disciplinary action. *Id.* at 563-67.

There is no dispute that, regarding the May 31, 2013 disciplinary conviction, Haywood received: (1) advance written notice of the initial charge and of the March 27, 2013 hearing before the UDC on that charge, *Doc. 6-1, at 25*; and (2) advance written notice of the amended charge and of the May 31, 2013 hearing before the DHO on that charge, *id. at 25, 44, 46*. In addition, there is no dispute that he was allowed to call a witness and testify in his own behalf, and that the DHO provided a written statement identifying the basis for his decision. Thus, the record is clear that Haywood was provided all of *Wolff*'s procedural protections regarding the disciplinary conviction.

Haywood's assertion that the BOP violated its own regulations, by increasing

his disciplinary sanction on appeal, does not state a federal due process violation. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (a prison official's failure to follow prison policy does not rise to the level of a constitutional violation).

Furthermore, to the extent that Haywood alleges a due process violation based on the amended disciplinary charge, which resulted in a more severe sanction, his argument fails. The Eighth Circuit held, in *Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir. 1992), that *Wolff*'s due process requirements were satisfied even though a prisoner was convicted of a more serious disciplinary offense than what was initially charged. The Court stated:

> This court has held in *Jensen v. Satran*, 651 F.2d 605, 607 (8th Cir. 1981) (per curiam), that *Wolff v. McDonnell* does not require the infraction notice to specify whether the offense charged was serious or minor. Here, the charge was possession of the Valium, and while the change from [possession of contraband] to [possession of dangerous contraband] raised the potential penalties, the factual basis for both was possession of the same Valium at the same time. It is evident that the conduct violation report gave Holt all of the information he needed to make his defense.
>
> That the Adjustment Board considered the contraband to be sufficiently dangerous to warrant an increased penalty may have been to Holt's detriment, but did not change the factual charge that had been made against him, namely possession of Valium. Any defense he would assert would not differ because of the increase in penalty. The facts are set forth plainly and clearly, and a constitutional violation has not been charged.

*Id.*

-8-

As in *Holt*, the amended charge against Haywood was based on the same factual allegations contained in the original incident report. Regardless of the particular code number or penalty severity, Haywood was clearly notified that the disciplinary charges against him involved the discovery of medication in his locker that he was not authorized to possess. His defense to the amended charge was the same as his defense to the initial charge: the medication was not his, and other inmates had access to his locker. Like the prisoner in *Holt*, Haywood was "plainly and clearly" provided "all of the information he needed to make his defense" against the disciplinary charges, regardless of the potential sanctions he was facing.

In any event, it is undisputed that Haywood was expressly notified on April 9, 2013 – *more than seven weeks before the May 31, 2013 DHO hearing* – that the disciplinary charge had been elevated and that a hearing would be held before the DHO on the amended charge. *Doc. 6-1, at 25, 44.* Haywood testified at the hearing, and he also presented documentary evidence and testimony from his only requested witness. *Id. at 48-50.* Thus, it is clear that he was adequately notified of the amended charge in time to prepare his defense. *See Wolff*, 418 U.S. at 564 (written notice is necessary "to inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense").

Accordingly, Haywood's due process claim, regarding the May 31, 2013

disciplinary conviction, is without merit.

### B. <u>Double Jeopardy</u>

The Double Jeopardy Clause applies only to proceedings that are "essentially criminal" in nature. *See Breed v. Jones*, 421 U.S. 519, 528 (1975). The Eighth Circuit has explicitly held that prison disciplinary proceedings "do not place an offender in jeopardy for purposes of the double jeopardy clause." *Kerns v. Parratt*, 672 F.2d 690, 691 (8th Cir. 1982); *see Percefull v. Robinson*, 2012 WL 3555309, at *4 (E.D. Ark. July 11, 2012) ("[T]he Double Jeopardy Clause does not apply to prison disciplinary proceedings."), *recommendation adopted* 2012 WL 3559954 (E.D. Ark. Aug. 16, 2012).

Accordingly, Haywood's double jeopardy argument is without merit.

### C. <u>Retaliation</u>

Next, Haywood argues that the elevation of the offense and sanction was in retaliation for his appeal of the Warden's decision.

The Eighth Circuit has made it clear that a habeas claim challenging a retaliatory disciplinary fails if the underlying disciplinary was based on a prisoner's *actual violation of a prison rule* and "some evidence" supports the violation. *Santiago v. Blair*, 707 F.3d 984, 993 (8th Cir. 2013); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). "Some evidence" has been construed to mean "*any* evidence in the

record that could support the conclusion reached by the disciplinary board."
*Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). This limited
review by federal courts does not require examination of the entire record,
independent assessment of credibility of witnesses, or weighing of the evidence. *Id.*
at 455.

Prison officials can permissibly rely solely on violation reports to find inmates
guilty of disciplinary infractions. *Id.* at 456; *Hartsfield*, 511 F.3d at 831; *Orebaugh
v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). Furthermore, the Eighth Circuit has
accepted a "collective responsibility theory" for contraband found in a shared area,
concluding that an inmate's failure to keep his living area free of contraband, in
violation of prison rules, constitutes "some evidence" to support a disciplinary
conviction for possessing that contraband. *Flowers v. Anderson*, 661 F.3d 977, 980-81
(8th Cir. 2011) (upholding disciplinary conviction under *Hill* where staff member
discovered weapons in a common area for which two inmates shared responsibility);
*Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990) ("some evidence" supported
disciplinary finding against inmate where contraband was found in a shared locker
box, even though another inmate admitted culpability).

Applying the *Hill* standard to the facts in this case, the Court concludes that the
record contains "some evidence" to support the DHO's finding that Haywood

committed the prohibited act of possessing unauthorized medication. It is undisputed that an officer found pills in his personal locker which were not prescribed for him. The fact that Haywood's locker was unsecured and accessible to other inmates did not render the evidence insufficient under *Hill*. The DHO made a detailed statement of the evidence upon which he relied to support his findings, including reports by charging and investigating officers, Haywood's statements to officers, and the testimony of Haywood and his witness at the disciplinary hearings. Under *Hill*, this Court cannot reweigh the evidence. Because the evidence in this case easily satisfies *Hill*'s "some evidence" standard, Haywood's claim that the disciplinary action was retaliatory fails.

### D.    Disallowance of Good Conduct Time

Finally, Haywood challenges the DHO's disallowance of 41 days of GCT for the May 31, 2013 disciplinary conviction, and 27 days of GCT for the May 17, 2013 disciplinary conviction. His argument is that, because he did not enter federal custody until January 31, 2013, he had not yet earned 68 days of GCT to be taken away.

Under the applicable law, Haywood was eligible to receive 54 days of GCT at the end of each year of imprisonment, subject to the BOP's determination that, during the year, he complied with institutional disciplinary regulations. 18 U.S.C. § 3624(b)(1). To calculate the date on which Haywood began to earn GCT, the BOP determined the date his federal sentence began (May 2, 2013), then subtracted the

number of days of prior custody credit (185 days). *Puckett Decl. ¶¶ 4-8.* Using that formula, the BOP determined that Haywood began earning GCT on October 29, 2012, and thus had the opportunity to earn up to 54 days of GCT between October 29, 2012 and October 28, 2013. *Id. ¶¶ 8, 31.* Under BOP policy, all of that GCT was available for "disallowance" for acts of misconduct that occurred during the one-year period. *Id. ¶¶ 30-31*; *see* BOP Program Statement 5880.28, at 1-40 to 1-42, 1-78T.

Loss of GCT is a mandatory disciplinary sanction for inmates, like Haywood, who were sentenced after April 26, 1996. 28 C.F.R. § 541.4(a)(2). For a "greatest severity level prohibited act," *i.e.*, a "100-series" offense, the BOP is authorized to "[d]isallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year." *Id.* § 541.3, Table 1. The sanction of 41 days disallowed GCT, for Haywood's Code 113 disciplinary conviction on May 31, 2013, fell within the range of acceptable punishments outlined by the applicable regulations.

For a "high severity prohibited act," *i.e.*, a "200-series" offense, the BOP is authorized to "[d]isallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year." The sanction of 27 days disallowed GCT, for Haywood's Code 205 disciplinary conviction on May 17, 2013, also fell within the authorized range.

According to DHO Puckett, when the number of GCT days disallowed in any

-13-

given year exceeds 54, only 54 days are subtracted in calculating the net effect on an inmate's sentence.[5] *Puckett Decl. ¶ 32*. Haywood's "Good Time Data" sheet, dated October 9, 2015, reflects that, although the "actual total" GCT disallowed during the applicable time period was 68 days, only 54 days were subtracted from his "Total Earned and Projected Amount" of GCT. *Doc. 6-1, at 20*.

Accordingly, the sanctions imposed by the DHO for both convictions were not improper, and Haywood's claim in this regard is without merit.

### III. Conclusion

IT IS THEREFORE ORDERED THAT this 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus, *Doc. 1*, is DENIED, and that this case is dismissed, with prejudice.

DATED this 6th day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5]According to DHO Puckett, the BOP maintains records showing the "actual total" number of days disallowed in the event any lost GCT is restored through the disciplinary appeal process. *Puckett Decl. ¶ 32*.